Security Systems v. NCR Security Systems, Inc. v. NCR Security Systems, Inc. v. NCR Good morning, Your Honor. Thank you very much. May it please the Court, my name is Peter Lambourianakos and I represent the Appellant Capital Security Systems. I would like to reserve two minutes for rebuttal, please. This appeal presents several issues of claim construction for the Court. I would like to try to focus on three of those issues today. The first issue involves the validation terms in the continuation patents. Validate the infringement terms. I would like to ask you two threshold procedural questions. One is you would have to prevail on overturning the claim construction with respect to each of those patents in order to prevail on the infringement. Is that correct? Yes, Your Honor. We would have to prevail with respect to the validation terms and with respect to the scanning terms. And the other thing is, I don't want to leap ahead to your other case, but you've got the other case going, and I just want to be sure I understand the overlay between the indefiniteness conclusions and the patents at issue here. Yes. So those three patents are impacted by one of the indefiniteness conclusions? That's correct. The ascertained and apparent signature term, which we're asking for review here in this appeal, has also been found indefinite, and that issue is being addressed in the second appeal. Thank you. Sorry to take your time. Sure. Thank you very much. So with respect to the validity terms, the key issue there, the key dispute is, should the validity terms be construed consistent with the claims and specification of the continuations, or should they be construed in view of statements in the 625 patent, which is the parent patent? Statements which do not appear in the specifications of the continuations. So specifically what I'm referring to is that in the continuations, the concept of validation of a document is that a document is reviewed, and the constituent parts of that document are reviewed themselves for validity. Each is reviewed, and then some standard that the bank requires is applied to each of those constituent parts to determine ultimately whether the bank will deem the document being deposited to be valid, and that is the validation procedure of the continuations. In the 625 patent, there's a teaching regarding validity of a signature, and generally in the 625 patent, a signature is considered valid if it passes one of two tests. It either is valid because when it's compared to the signature on record of the user, it's sufficiently close, it's authentic, or at least it bears significant or sufficient similarity with the record signature. There's another embodiment which discusses actually recognizing the characters of the signature to a confidence level, and having those characters confirmed by the bank. What part of the 625 patent specifically are you relying on? Well, for the 625 patent, we are actually saying that there are two statements which were applied by the District Coordinates Construction, which are not in continuations, and which should not have been used to read the requirement of signature authentication into the continuations. So looking specifically at 625 patent at Column 3, Lines 1 through 3, which is Appendix 369, and additionally on the same page, Column 4, Lines 9 through 12, these state that the foremost problem is integrity of the document being exchanged for cash, in particular, verification of signatures on checks or money orders being cashed. The second statement says the cashing of checks or money orders is achieved by the ability to read the cursive signature of the drawer or maker of the instrument to verify the cursive signature as being that of a profiled or qualified user who has inserted his ATM card into the machine. So the District Court relied on these statements requiring that all claims of all the patents, even though these statements are not in the continuation specification, and even though the continuation claims deal with check depositing, not check cashing, he relied on these statements to read signature authentication into the definition of validating a document. And that goes to the 600 and the 948, right? Correct. And the 696, because there is a term valid to determine that a signature is valid in the 696. Okay. Well, even if we were hypothetically to agree with the argument you've just made, you're still left with the scanning limitation. That's correct. So why don't you turn to that briefly? So the argument regarding scanning dispute is simply whether scanning requires sweeping across an image. Does it require some relative movement between the document being imaged and the imaging device? Now, the District Court concluded that sweeping across an image is required, and it based that decision on extrinsic evidence. However, looking in the patent specification itself, it's clear that the inventor did not regard the term scanning to require relative movement. The only embodiment in the patent for the ATM, which includes an imaging station, is an embodiment where the check is fed to the camera and stops, so it is stationary. And then two cameras, which are 58 and 60 in the embodiment, take images of the front and back of the check. Now, that is called imaging in some parts of the, or capturing an image in some parts of the specification. It's called scanning and others. Sometimes those terms are used interchangeably. Okay. Maybe I misunderstood. There's a lot going on in this case. But I understood, leaving aside the dictionary definitions, and I understand you're arguing that the record. But I thought there's also evidence in the specification that talks about scanning and then capturing as being two separate things, right? There is a sentence which says, the check is scanned or images of the front and the back sides of the check are captured. That's correct. That's in column, go ahead. I'm sorry, I didn't mean to interrupt. Just in case you're looking for it. That is correct. And we regard this not as identifying two different ways of capturing an image. We identify this as sort of, in other words, you're saying it's scanned. In other words, images are being captured. And we believe that that is correct because there are other disclosures in the specification where the cameras are described as actually taking photographs of the check. So, for example, in the 600 patent, at column 19, lines 12 through 15, it states, in a manner similar to that used for the scanning of the check, the cameras 58 and 60 photograph both sides of the cash money order and locate the indicia showing the amount of the money order, et cetera. So that's a case where the same cameras that are disclosed earlier as scanning or capturing an image are disclosed as taking photographs. Now that's significant because NCR has cited to the abacus case as support for the proposition that scanners require relative movement. In that case, the court found, however, that cameras are not scanners and photographing is not scanning. And therefore, it appears, at least in this particular discussion, that those cameras are taking photographs, which means it's not scanning. And so we have a situation where the patentee is referring to scanning, photographing, capturing images, not any specific intent to show that there is sweeping. And in fact, the embodiment doesn't show any sweeping. I'm a little confused by your position. I think what I hear you saying is that this text that you quoted from column 19 shows that scanning is different than photographing or capturing an image. Is that what your position is, or do I misunderstand you? Well, what I'm saying is that this discloses photographing. It says, in a manner similar to that used for scanning of the check, the cameras photograph both sides of the cash money order. That's correct. Are you equating these two concepts, or are you distinguishing them? I'm saying that the patentee used the term scanning, photographing interchangeably. The patentee wasn't saying, we have relative movement, we do sweeping. The patentee is just saying, we need to take images. And he's got two cameras and a check that's stopped between those cameras. He uses scanning, he uses photographing, he uses capturing images. And you're relying on the language in particular that says, in a manner similar to that used for the scanning of the check. Yes, because it's one embodiment. The only thing that's disclosed is one embodiment with those two cameras. So those cameras are capable of taking photographs, which doesn't involve the relative movement. The sweeping, that was read into the claim term. Do you have any other parts of the specification like this that you're relying on for that position? This is the one that actually uses the term photograph. So, at column 13, lines 59 through 62, which the court referred to earlier, with the language, the check feeds directly into and stops at an imaging station where the check is scanned or images of the front and back sides of the check are captured. This was the language relied on by NCR to say that those are different. But then later on in the case, in column 14, lines 7 through 11, it says, also while in the vertical stop position is preferred to have a camera unit 58 and 60 disposed on opposite sides to capture images of both sides of the check and connect through SCSI device 59 to the computer. So the same devices, sometimes they're referred to as scanning, other times they do image capture. So, the key item here is that there's no obvious intent here, looking at the embodiments and looking at the language, that indicates that the patentee intended for the capture of images in its invention to be limited to using a scanner that sweeps. It makes no difference to the invention whether there's a scanner that sweeps or not. It's irrelevant. All that matters is that images are captured. And so, what's happened here is that NCR has seized on the use of the term scan to try to get a limitation into the claims, when that limitation is not clearly required, is not supported by any disclosure, but instead is supported by looking at the word scan, which is used interchangeably with other terms, and then using dictionaries and other extrinsic evidence to get sweeping into the claims. And so, we believe that the record here is consistent, that the patentee was not intending to limit this invention to an ATM that has a scanner that uses swiping for gathering an image. Um, you're almost done. Why don't we hear from the other side and we'll save you a minute. Thank you, Your Honor. Thank you. May it please the court. Paul Hughes for Appley NCR. So, I'd like to begin with the scanner limitation. I do think the scanner limitation is the easiest way to resolve the continuation patents and then turn to the caching limitation, because that may be the easiest way to resolve the 625 patent. As the court identified, the specification of the continuations quite clearly distinguishes the concept between... But your friend had a decent answer, did he not, to my pulling out that... You're talking about the same sentence in the spec that we were talking about earlier, right? Yes, Your Honor. And there's additional evidence, but yes, Your Honor. Okay. Well, on that one, why isn't it fairly read... IE kind of reference? So, you've got the word or. So, your argument is that they've got to be two different things because there's an or there. But why isn't it fairly read as just being kind of IE or EG or something other than... Well, Your Honor, I think the disjunctive canon is quite strong. And the patentee is clearly distinguishing two different concepts, which is consistent with all the extrinsic evidence about what's going on in this field, which is to say there are two different ways in which digital data can be put into an ATM. One is via a scanning device, which has a sweeping motion. Another is via image capture. What are your other reliance? So, Your Honor, when we turn to column 14 on the next page at the very top, beginning at line four, that paragraph distinguishes the concept between scanned and then that's in line five. And then in line nine, there's a separate discussion of capturing images. And again, that's showing that there is a recognition that scanning is used in one place and image capture is used elsewhere. And I think read with the prior sentence that the court pointed to with the disjunctive makes quite... What about later on in that same column? Lines... Looks like it's lines 18 through 20. It says the scanner uses camera 58 and 60 to scan both sides of the documents. Yes, Your Honor. And this is what the district court referenced at page 56 of the appendix, a camera can perform a scanner function if the camera is configured such that the light beam sweeps. And that's entirely consistent with what this court held in the Abacus case. Because in Abacus, the court looked to a particular kind of scanner where there was no movement of the thing that was being scanned. And the court said there doesn't have to be mechanical movement of the thing being scanned if the light beam from the scanner is what's doing the sweeping. So it's certainly the case that a camera can be configured to scan if it has a sweeping motion from the camera. How do you respond to the point identified in column 19 lines? I guess it's about 13 through 15 where it says, in a manner similar to that used for the scanning of the check, the cameras 58 and 60 photograph both sides of the cash money order. I think the use of the word similar is quite telling. It's not saying it's the same manner as scanning. It's a manner similar. Well, but before it was talking about a check, and now it's talking about a cash money order. Well, and it's distinguishing that scanning is something that may be similar to image capture, but it's not the same thing. These are two distinct concepts. And also identify that all of the extrinsic evidence in the record, this includes the dictionary definitions that have put, but not just the dictionary definitions, also the prior art references that weren't introduced by NCR. They were introduced by CAPSEC. There are two separate prior art references that CAPSEC said identified what the one skilled in the art would understand these terms to mean. And when we looked at those references, they only supported a sweeping notion. Now, this was a factual finding by the district court that CAPSEC doesn't challenge because there's no basis. All of the extrinsic evidence demonstrates that this was the technical meaning that was in the art. This is the exact same analysis the court adopted in the MIT Viabicus case, where there the court said that there was some ambiguity in the specification. So the court looked to extrinsic evidence, including prior art patents and dictionary definitions, found there was a sweeping motion. The art and the references that were relied on the Abacus case, which was signed in 2006, directly contemporaneous with the file date of these patents, the same sorts of dictionary definitions and prior art patents that are relied upon here. This case, though, is stronger yet than the Abacus case because there are the multiple cases, in particular that one sentence that uses the disjunctive, but also in column 14, where the patent distinguishes between the concept of image capture and scanner. And again, as I said, this is entirely consistent with everything that's in the extrinsic record. Again, that is a factual finding by the court that's not been challenged by CAPSEC. So I think when all of those things are combined, that makes a very powerful case for why the district court was correct, that in its understanding that scanning is a term of art in this field that is quite distinct from the concept of image capture. Can you give me the appendix page site for the fact finding that you're referring to? Yes, Your Honor. This is at appendix page 56. The court is considering the prior art references, which the court addresses at the bottom of appendix page 55, characterizes NCR's argument that relies on this prior art and what the prior art shows. The court agrees, then continues to discuss the court the common ordinary meaning of scanning. And then from there, cites also additionally to the dictionary definition. So it spans pages 55 and 56 of the appendix. So I know you were planning to turn to another, the caching system, but why don't you deal with the other alternative basis here on validating the document that you're referring to? You spent a lot of his time on. Yes, Your Honor. Would you like me to focus first on the continuation patents? Yes, yes. So there are two separate claim terms in the continuation patents. The 696, I think, stands on somewhat different footing than the 600 and the 948. So to begin with the 696, I think that the- Well, can you actually, I'm sorry, could you do the 600 and the 948? Absolutely, Your Honor. Those are the claims that deal with authentication, right? Yes, they deal with validating the document. Validating and ascertaining an apparent signature. And I'll certainly, yes, Your Honor. And let me just say to begin, much of this analysis has been overtaken by the subsequent indefinite proceedings that we're going to, of course, talk about next. Because it is in the exact same claim term, the whole claim language is ascertained an apparent signature from the document in order to validate the document. So we're looking at the end of that phrase to validate the document. But this whole claim- But the signature verification and those claims just consists of ascertaining an apparent signature, right? We disagree, Your Honor, because that would then render the language to validate the document entirely superfluous. It wouldn't have any function in the claim language if the earlier step of ascertaining the apparent signature were sufficient to validate the document. That's why the canon that suggests all words have to have meaning in the claims and reads against the superfluous claim language suggests why validating the document has independent meaning. And also, again, the cap sex construction that this can just- Well, can we just stay there for a minute? I mean, I've got the abstract. I mean, I thought in these patents, these two continuations at least, it describes in the abstract, it says validation of the document involves one word, the following. Validating the presence of a signature, not the authentication, right? Well, Your Honor, that describes the earlier part of the claim language, ascertaining an apparent signature. Then the question is, what does it mean to validate the document? In specification, we think there's only one embodiment that possibly describes what a validation of the document would look like. And for example, in the 600 patent, that's an appendix page 466. And the language there is that the machine will, quote, analyze a signature image and compare it with the profile signature of the user. So in the only embodiment that we understand has this explanation of what validation looks like in the signature, it's doing the exact kind of comparison analysis that the district court adopted with respect to both the 600 and the 948. Now, they also, CAPSEC points us to the OCR embodiment, but the OCR embodiment doesn't provide any discussion as to how the validation actually occurs. So we think that OCR embodiment doesn't bear on this question. And if anything is entirely consistent with what the district court understood as to there being a comparison requirement. But again, to the court central question, I think our principal argument is their contention would read the back end of the claim language out of the claim if the earlier step of ascertaining the parent signature, which again, we think is indefinite. We think that's the key problem here. But if that were sufficient, the back end of the claim would cease to have any purpose. Instead, we think the better understanding is to see that that has a validation purpose, which is entirely consistent with what the district court, how it construed the claim language. Moving though to the other continuation patent of 696, I think our argument there is yet stronger because there the claim language is determining if the signature is valid. The plain text meaning of valid as the district court found is quite compelling evidence for its construction. Also, there is a limitation differentiation between the prior limitation, which deals with ascertaining the apparent signature and the same specification argument applies. But again, as we've said, we think these claim terms are largely overtaken by the indefiniteness argument. And that's in no small part because the alternative claim construction that CAPSEC advances, which turns on specific banking parameters, would create the exact kind of indefiniteness problem that the district court subsequently found with respect to the ascertain apparent signatures. And that's because CAPSEC is of the view that claim scope here would be determined by what parameters a bank sets. But there's no way to know within the context of the confines of the patent what those parameters would look like. Yes, Your Honor, I'm getting ahead of myself. So turning though to the caching system, there are two main disputes, of course. The first is whether or not in the with respect to claim one of the 625, if the preamble is limiting and we think that it is obviously limiting. All the factors that were identified, for example, in polyamor are met here. The title, the abstract, the background summary, everything describes this as a check caching system. By reply, CAPSEC seems to have abandoned the argument that the preamble isn't limiting. And I think they've also rendered it irrelevant because they at least agree that there is a check caching limitation that exists somewhere in the claims. We think it's most naturally found in the preamble of the claims, but it certainly exists somewhere in the claims. In terms of the construction of the phrase, CAPSEC's principle argument is that check caching was too narrowly construed by the district court because it was construed to mean that in CAPSEC's view, one can cache a check for more than the face value of the check. And we think that's just a fundamentally incorrect construction. Rather, the district court got this precisely correct. The district court found that caching is, quote, providing cash during a single ATM session up to the amount of the instrument presented. In the appendix page 48, the district court underscored what it understood by this, which is it has to be the money from the check, not the money from your account. That was the district court's clear understanding of what check caching means in this context. That's absolutely correct. Can I ask you, I'm going to go back to the scanner limitation for one minute. You had said that the patent number didn't challenge the district court's determination about the common and ordinary meaning of scanner, but why didn't they do that at pages 37 through 40 of their brief, where they talk about the district court, the extrinsic evidence that the district court relied on? So, Your Honor, at page 37 to 40, where their focus is principally, as I understand it, on the dictionary date of the dictionary that the district court relied upon, there are a few problems with that. First, as this court said in Shire, we look to the relevance of dictionary dates when there's a dispute as to whether the dictionary definition has changed. And there's certainly been no change in the dictionary definition. But my question is, why do you think they don't contest it, in this section of the brief? I mean, they have other things where they say, even if these definitions were relevant, they should have been rejected as being inconsistent. So I'm just wondering, it seems to me, they did contest the district court's findings. So I'm trying to understand where you're getting that from. I should be more precise in what I say, and I apologize, Your Honor. What our contention is, the extrinsic evidence is entirely one-sided. There's only, the only extrinsic evidence is pointing in our direction. So there's no extrinsic evidence that CAPSEC has pointed that would suggest that their interpretation of scanning was anything understood as ordinary and customary in the relevant art. Wait, I mean, I'm just looking at the pages that Judge Stowe was referring to, and they talk about the IEEE dictionary. And they're saying there's a different definition there? I wasn't understanding your point. You're saying you put in all these definitions, all these dictionaries that weren't necessarily contemporaneous with the filing of this patent, but you say they never rebutted it? Well, Your Honor, the district court made a factual finding based on these dictionary definitions, and they've not shown that there was any material dictionary definition that had some alternative construction of scanning. And again, I'll point- They say the IEEE dictionary, it's on the top page 38, contains an entire page worth of definitions, none of which appear to be relevant to a scanner. Oh, I guess they're complaining about your definition. No, that's right, Your Honor. They're complaining that the definition they don't think was probative. They don't have an alternative definition that they say instead the court should have relied on this alternative definition in lieu of what we presented. And that's where I'm saying the evidence is all one-sided in this case. And again, the court can look to abacus software where the court went through this exact same analysis and it pointed, for example, to the Webster's Dictionary, and it said the 1968 definition of scanner is the exact same definition in the third edition of Webster's in 2002. There's been no change. And so that's why the court in Shire said when somebody wants to dispute a dictionary definition or particularly a publication date, it's incumbent on them to come forward with some basis to think that this has changed over time. And CAPSEC's not done that. But additionally, beyond the dictionary definitions, and I'll just close with the two pieces of the prior art that the district court looked to and found compelling were prior art that CAPSEC itself submitted during the Markman hearing saying that that was prior art that was relevant to the claim construction dispute because it bore on these questions. And again, that the district court was proper to find on. Thank you. With respect to the scanning issue, our position is that the specification discloses one embodiment. It has two cameras. Those cameras are characterized as taking photographs. They're characterized as capturing images. There's also the use of scanning that's used to describe the operation in general of the image being captured from the check. There is definitely only one embodiment if those cameras take photographs. And what we've seen in the case law that was submitted by NCR, a photograph is not a scan. A camera is not a scanner. Oh, so one of the issues here is that the district court said that the ordinary meaning of scanning involves some sweeping motion. That's correct. Did you contest that? We contested that the application of extrinsic evidence to contradict or change the meaning of how the inventor was using the term scan in the intrinsic record was improper. So the intrinsic record shows cameras and shows a stationary check. So our view is there's no sweeping going on there. I understand your position. If I can summarize it for a minute. I think what you're saying is the ordinary meaning might include sweeping. But in the context of this specification, it should be understood that the inventor wasn't using scanning in that sense and instead was using it just to be a capturing with a camera. Exactly. So to be clear, we're not excluding sweeping. What we're saying is that the image can be taken in any way that's disclosed. It could be by photograph, et cetera. So the term scan in the claims isn't intended to be limited only to using sweeping to obtain an image. And that's the crux of our argument. With respect to the caching issue that was raised, the first issue with respect to caching is the fact that the district court read into the definition of caching that in a single session at an ATM, caching can take place. A caching system can only provide up to the amount of money that's provided by a check being cached. A single session at an ATM, however, can involve multiple transactions. And so while you can cache a check and obtain money against the check, and we don't dispute that caching involves getting money in exchange for a check, there can be other transactions that take place during the ATM session, which would allow the user to obtain more than the amount of the check. And that type of transaction is excluded from the claims based on this by the court's construction. And there's no evidence in the record to support it except the district court's understanding of what check caching means. There was no actual proper intrinsic evidence that was relied upon. Okay. Thank you. We thank both sides. That case is submitted.